In the Matter of HARRY A. VOGELSTEIN, an Attorney, Respondent.

First Department, July 15, 1932.

*Einar Chrystie* of counsel [*L. B. Reynolds* with him on the brief], for the petitioner.

*Leo H. Klugherz,* for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on June 1, 1925, at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, held in the county of New York, and has practiced as such attorney since his admission.

By the petition herein the respondent is charged with professional misconduct in two specifications:

*First,* with the conversion of $500 which he had received on behalf of a client whom he represented as defendant in a separation action, for the purpose of payment to the attorneys for the plaintiff in said action, the balance of their fees.

*Second,* with neglecting the interests of a client, resulting in the entry of judgment on default aggregating $3,000, and thereafter refusing to pay the sum of $450, for which said judgments had been compromised, notwithstanding the express agreement of the respondent to pay the same, and his obligation so to do under his agreement of retainer.

The respondent answered, and the matter was referred to an official referee to take testimony with respect to the charges and report the same to this court with his opinion thereon.

Hearings were duly had and the testimony completed. The referee, however, died before having rendered his report.

The petitioner moved that this court proceed to take such action upon the evidence adduced before the referee as it might deem just and proper.

The respondent, in opposition, urged that he had been unable to produce before the referee certain evidence in support of his defense, which evidence he was now in a position to obtain. Leave was granted the respondent to submit this additional evidence, and to the petitioner to submit memoranda with respect thereto.

Upon the record as so supplemented, the following facts appear with respect to the first mentioned charge:

In 1927 Charlotte T. Boardman brought an action for a separation against her husband, Derick L. Boardman. Messrs. Deane & Cook appeared as attorneys for the plaintiff in the action, and Philip A. Walter of that firm had charge of the matter. The respondent Harry A. Vogelstein appeared as attorney for the defendant. An agreement finally was reached between the parties and counsel that $10,000 should be paid to the respondent on behalf of the defendant, of which Mrs. Boardman should receive $7,500 in lieu of alimony and counsel fee, the remaining $2,500 to be paid Mr. Walter as counsel fee in accordance with certain representations made by him as to a tax of $750 in Mexico arising in connection with the proposed divorce. It also was part of the agreement that Mrs. Boardman should obtain a Mexican divorce from the defendant. Pursuant to this agreement, the father of the defendant paid to the respondent the sum of $10,000. Upon the representation of the respondent that he was not getting any money from his client, Mr. Walter voluntarily agreed to allow to the respondent $500 out of the $2,500 fee that he was to receive. On March 13, 1928, the respondent paid the attorneys for the plaintiff $1,500 on account of the fees they were to receive. Pursuant to the foregoing, on March 22, 1928, the plaintiff's counsel prepared duplicate copies of a letter, of which the following is a copy:

" *March* 22, 1928.

" Harry A. Vogelstein, Esq.,
    " 2 Lafayette Street,
        " New York, N. Y.
            " *In re Boardman.*

" My dear Vogelstein: Confirming understanding with you, you will please be advised that the sum of $2,000 will cover all fees of myself and any other attorneys retained in connection with the settlement of the above matter. I acknowledge receipt of $1,500 on a/c of such fees.

" I am inclosing herewith stipulation of discontinuance of the separation action in New York and would thank you to serve me with a copy of the order of discontinuance after its entry. I am

also turning over to you duplicate original separation agreement and power of attorney from Mrs. Boardman in blank. These documents are to be held by you in escrow and are not to be delivered to Mr. Boardman until the entry of the Mexican decree.

" I agree that the sum of $7,500 in cash, the amount to be paid under the separation agreement will not be turned over to Mrs. Boardman until the entry of a decree in the Mexican Court. If decree not entered said sum to be returned to you.

" I acknowledge receipt of list of articles that Mr. Boardman is willing to turn over to Mrs. Boardman now and it is understood that we will agree later on on a division of the articles which he refers to on the second page of said list. Will you please indicate your understanding of this settlement below.

" Sincerely yours,
" (Sgd) PHILIP A. WALTER.
" O. K.   HARRY A. VOGELSTEIN."

One copy of the foregoing letter was delivered to the respondent and the respondent wrote, " O. K. Harry A. Vogelstein " on the other copy and gave it to plaintiff's counsel together with the sum of $1,500 on account of the fees therein referred to. The respondent also agreed to pay the balance of said fees upon the entry of a decree of divorce in an action brought by Mrs. Boardman against her husband in Mexico. On or about April 18, 1928, a decree of divorce was entered in the Mexican action. Thereafter Mrs. Boardman's counsel notified the respondent of this fact and requested payment of $500, the balance of the amount for counsel fees which had previously been given to the respondent by the father of his client. The respondent ignored numerous demands made upon him for the payment of this money.

In defense of the charge that he had converted to his own use the aforesaid sum of $500, the respondent testified before the referee that in negotiating the agreement in respect to counsel fees, it had been represented to him by Mr. Walter that the State tax in Mexico for a divorce action was $750 and that in view of that and the expense of a Mexican attorney, he would require $2,000 for his services. That subsequently it was ascertained there was no tax of $750 and that only $250 had been paid to attorneys in Mexico for services in procuring the decree of divorce. Respondent further testified that upon communicating these facts to Mr. Boardman and his father, who had furnished the $10,000, coupled with a request for payment for services rendered, he was instructed to retain for himself the aforesaid balance of $500.

Upon the hearings before the referee the respondent did not produce as witnesses in support of his contention either his client or the father of his client. The respondent, pursuant to permission

of this court, now submits an affidavit of his client Derick L. Boardman, fully corroborating the respondent. This affidavit in its preciseness is in marked contrast to testimony given by the deponent as a witness for the respondent before the petitioner's committee on grievances. At that time said witness repeatedly testified he had no specific knowledge concerning the details of the transaction. He did testify, however, that the allowance for counsel fees had been fixed in reliance upon representations of what the divorce would cost, and to a recollection that there was something left over which the respondent had been instructed to keep.

Assuming that the respondent has established that his client told him that he might keep the remaining $500 on account of his services, and assuming that certain representations were made by Mr. Walter as to costs and necessary disbursements in order to obtain this Mexican decree, we are unwilling to find upon this record that the failure of this respondent to turn over to Mr. Walter this $500 constitutes a reason for administering discipline to this respondent. Mr. Walter has already started a civil action to recover this money and has been denied a summary judgment, which has been affirmed by this court, thus showing that in the judgment of the Special Term and this court there are real issues of fact which call for a trial.

In reference to the second charge against the respondent, it appears that in 1928 actions were brought by Nora C. Murphy and Edmund J. A. Murphy against Francine Miller in the City Court of the City of New York to recover damages arising out of personal injuries suffered by Nora Murphy because of the alleged negligence of the defendant. In July, 1928, the defendant retained the respondent as her attorney in these actions, and he was substituted as such attorney in place of attorneys who previously had appeared for the defendant. On or about August 23, 1928, the defendant, Francine Miller, paid the respondent $150 in consideration of his written agreement and receipt, of which the following is a copy:

" Francine Miller's Beauty Shop
" 1329 St. Nicholas Avenue, New York
"*August* 23, 1928.

" Received from Francine Miller the sum of One hundred fifty ($150) dollars which shall include fees and payment of any judgment obtained by Nora C. Murphy and Edmund Murphy against Francine Miller as the result of an action now pending between said parties in the City Court of the City of New York.

" HARRY A. VOGELSTEIN.
" Witness:
" VERNON DAVIS."

In due course the above-mentioned actions were called for trial. No one appeared on behalf of the defendant, and judgments on default were entered against the defendant Francine Miller aggregating $3,000 and costs. Executions were issued and the sheriff called at the defendant's place of business and threatened to levy upon her property. Miss Francine Miller, the defendant, testified before the referee that she called at the office of the respondent, found him absent, and explained the situation to his associate. The latter communicated with the respondent by telephone, and then informed the defendant that the respondent would reopen the case the following morning. This witness further testified that the case was never reopened, and that she was compelled to pay $425 in settlement of the claims.

In defense the defendant claimed that his default was purely inadvertent, that Miss Miller refused to sign papers in support of a motion to open the default, and that the attorney for the plaintiffs refused to consent, and threatened to call the attention of the court to the receipt which the respondent had given the defendant in the event said motion was made. Respondent further testified that he had offered to return to Miss Miller the $150 received from her, which she had refused. Both Miss Miller and the attorney for the plaintiffs denied the aforesaid. The attorney for the plaintiffs testified he advised the respondent that he would abide by any settlement his client was willing to accept, and that the respondent at first offered to pay seventy-five dollars, then said he could not make it, and asked for more time. The defendant testified that the respondent offered to give her a note for any amount she paid in settlement of the judgments.

The respondent, in explanation of the extraordinary agreement whereby, for the sum of $150 paid by the defendant Francine Miller, he undertook to defend the action and pay any judgment recovered, claimed that this was done upon the representation of the defendant that the plaintiffs had offered to settle the actions for the sum of $100, and the belief of the respondent that there was no real merit in the actions. The defendant had been introduced to the respondent as a client by one Vernon Davis. At the hearing before the referee the respondent stated he had intended to produce this person as a witness in support of his contentions in defense of this charge, but had been unable to locate him. In accordance with permission granted, the respondent has submitted an affidavit from said Vernon Davis, which reads as follows: " Vernon Davis, being duly sworn, deposes and says:

" That I am a business broker at 152 West 42nd Street and I

know the complainant, Miss Francine Miller, and the respondent, Harry A. Vogelstein.

" I introduced the complainant to Mr. Vogelstein when she told me that she had been sued for damages in an action for negligence brought by Edna Murphy, based upon a claim that the plaintiff in that action had been injured by being burnt in the complainant's beauty parlor. That it was a City Court action. She told me that the attorneys that she had previously retained were unable to proceed further with her case. I suggested to her that I would speak to an attorney, and accordingly brought Mr. Vogelstein to her.

" I was present at the time that a receipt was given by Mr. Vogelstein for $150. This was done at the place of business of the complainant. That before the receipt was signed and during the discussion, Miss Miller told us that she said she could settle the case for $100, the amount which had been asked from her by the attorney for the plaintiff in that action. Thereupon respondent signed a receipt and received the money.

" In April, 1929, the respondent informed me that inadvertently a judgment had been taken by default in the action against Miss Miller, and that it was imperative for her to call at his office to make an affidavit to open the default; that he had telephoned to her that she must come to his office and that she had declined to do so. The respondent asked me to get into communication with Miss Miller to get her to come to respondent's office. I thereupon telephoned to Miss Miller and asked her about this. She told me that a judgment had been obtained against her and that Mr. Vogelstein had asked her to come down to sign an affidavit to open the default. She did not see why she was obliged to do so. That it was up to Mr. Vogelstein to pay the judgment, and that she was so advised by the attorney for the plaintiff in that action. I then pleaded with her to go down to his office and that I was assured everything would terminate satisfactorily, but she insisted that she would do nothing at all."

Upon the record as thus supplemented, it would seem that the situation arose in part through the refusal of the defendant to co-operate with the respondent in an attempt to open the default. The respondent having assumed liability for any judgment recovered, could have no possible motive — at least none has been shown — for willfully suffering a default judgment and thereafter refusing to take any steps to open the default.

We do not find that this second charge constitutes a ground for discipline. It does appear that this respondent made what

appears to be at most a reckless contract to guarantee to his client a complete disposition of this personal injury action for the sum of $150. He was entitled, however, to have the complete co-operation of his client in the defense of the action and the necessary steps in connection therewith. We are unable to find upon this record that he had such co-operation, particularly in opening the default. The respondent has recognized his clear contractual obligation to pay the amount which the defendant in the personal injury action had to pay in settlement thereof by testifying that he offered the $150 which he had received in partial payment of this obligation. We do not find upon this record that such an offer has been made, but, on the contrary, believe that it has not yet been made. The contractual duty of this respondent under the facts here adduced is clear. Upon this record, however, we are unable to find that grounds for discipline have been sufficiently established. Accordingly the proceeding is dismissed.

McAvoy, Martin, O'Malley and Townley, JJ., concur.

Proceeding dismissed.